In re Linda J. STRAHM, Debtor.

Linda J. Strahm, Plaintiff,

v.

Great Lakes Higher Education Corporation, Defendant.

Bankruptcy No. 04–39457.
Adversary No. 05–3147.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

July 6, 2005.

Duane A. Goettemoeller, Esq., Sidney, OH, for the Plaintiff.

Jeffrey S. Rosenstiel, Esq., Cincinnati, OH, for Educational Credit Management Corporation.

## DECISION ON ORDER DENYING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

THOMAS F. WALDRON, Chief Judge.

### Background

On October 28, 2004, Linda J. Strahm (the Debtor), filed a chapter 13 petition (Estate Doc. 1) and proposed a chapter 13 plan. (Estate Doc. 4) The Debtor scheduled a student loan debt in the amount of $2,641.68 on Schedule F. (Estate Doc. 1) The chapter 13 plan was, without objection, confirmed on February 1, 2005 (Estate Doc. 12) and provides for payments of $218 per month for at least 36 months with a proposed dividend to unsecured creditors of one percent.

On March 25, 2005, the Debtor filed an adversary proceeding against Great Lakes Higher Educational Corporation (the Creditor), seeking to discharge the student loan debt pursuant to the undue hardship standard of 11 U.S.C. § 523(a)(8). (Adv. Doc. 1)

On April 27, 2005, the Creditor filed a Motion to Dismiss For Failure to State a Claim. (Adv.Doc. 5) The standard for determining a motion to dismiss imposes stringent requirements on the movant. A motion to dismiss must not be granted unless it appears beyond doubt that the movant is unable to prove any set of well-pleaded facts in support of the claim which would entitle the movant to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir.2004); *Talbot v. Ohio Student Loan Comm'n (In re Stall)*, 125 B.R. 754, 756 (Bankr.S.D.Ohio 1991).

The Creditor asserts that this complaint (and suggests that any other similar complaints), filed in the early months following confirmation of a chapter 13 case, rather than the later months near the time of discharge, must be dismissed for failure to state a claim since the issue of the dischargeability of the student loan debt is not "ripe" and further:

> Because the Plaintiff's circumstances may change in the next five years, now is not the time to consider this complaint. Because any determination now would be speculative, the Plaintiff's complaint must be dismissed until consummation of Plaintiff's Chapter 13 Plan is imminent. (Adv.Doc. 5)

On May 17, 2005, the Debtor filed a Response To Motion To Dismiss (Adv.Doc. 6) which asserted:

Your debtor wishes to have the determination made in the within case, so that it might be possible to complete the payments in the within chapter 13, if the court determines that it is possible, after payment of the amounts due all other unsecured creditors under the plan, so that the discharge in this chapter 13 may truly be a discharge of all debts included by the debtor in her plan.

On May 24, 2005, the Creditor filed a Reply to Response To Motion To Dismiss (Adv.Doc. 8).

### Issue

May the Debtor file an adversary proceeding seeking to determine the dischargeability of a student loan in the early months following confirmation of a chapter 13 plan, rather than the later months near the time of discharge, or, upon the Creditor's motion, must such an adversary be dismissed for failure to state a claim upon which relief can be granted?

### Determination

█ The court determines that a debtor in a chapter 13 case is not prohibited from filing an adversary proceeding seeking to determine the dischargeability of a student loan at any point during the chapter 13 case and is not subject to dismissal for failure to state a claim upon which relief can be granted by filing such an adversary proceeding in the early months following confirmation of a chapter 13 plan, rather than in the later months near the time of discharge.

### Analysis

#### Applicable Bankruptcy Rule

Initially, it is necessary to note that Bankruptcy Rule 4007(b), in relevant part, specifically authorizes that "[a] complaint other than under § 523(c) may be *filed at any time.*" (emphasis added) A student loan adversary, brought pursuant to 11 U.S.C. § 523(a)(8), is not raised under § 523(c) and, accordingly, may be filed at any time.

The creditor, appropriately, does not argue that any provisions of the Bankruptcy Rules, the Bankruptcy Code, or any other statutes require a debtor to file an adversary proceeding seeking to determine the dischargeability of a student loan at any specific time in a chapter 13 case.

#### Applicable "Ripeness" Considerations

In the absence of a Code or Rule based argument, the Creditor's primary argument is a policy argument that the timing of the filing of this adversary is such that the determination of the dischargeability of the student loan is not "ripe" for decision. Although both counsel use the term "ripe," the court rejects any assertion that this court lacks subject matter jurisdiction or any decision would be a mere advisory opinion. See generally *J–II Enters., LLC v. Bd. of Comm'rs of Warren County, Ohio,* 135 Fed.Appx. 804, 805–806, 2005 WL 1285640, *1 (6th Cir. May 18, 2005) (unpublished), *citing Bigelow v. Michigan Dep't of Natural Res.,* 970 F.2d 154, 157 (6th Cir.1992). Jurisdiction in this court is pursuant to 28 U.S.C. § 1334(a) in a case referred to this court under the Standing Order of Reference entered in this District. The court determines this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) [See 11 U.S.C. § 523(a)(8) ] None of the parties' filings contest these determinations.

The parties do not employ the term "ripe" in a jurisdictional sense, but, rather, in a "timing" sense. The argument presented is more prudential, rather than jurisprudential. The Creditor asserts (1) the Debtor's discharge is "distant and uncertain" and (2) circumstances may change which would result in a different determi-

nation of undue hardship in the future. This policy argument continues that it would be an inappropriate burden on the Creditor and an unnecessary expenditure of judicial resources to require pretrial preparations and a resolution through an evidentiary, or non-evidentiary, determination at this stage of this chapter 13 case, rather than at or near the time of discharge. The court recognizes the case law adopting the policy arguments advanced by the Creditor as an operating principle in various bankruptcy courts. See, e.g., *Bender v. Educ. Credit Mgmt. Corp. (In re Bender)*, 297 B.R. 126, 132–33 (D.Neb. 2003) (Court finding student loan adversary filed by chapter 13 debtor is not yet ripe for adjudication and collecting cases.) This court respectfully disagrees with such decisions[1] and rejects the Creditor's request to establish a rigid time period regarding such a complaint, particularly when such a time restriction is notably absent from the Bankruptcy Code, Bankruptcy Rules or other statutes.

It should also be noted in determining § 523(a)(8) issues, consideration of the factor involving whether "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period" of the student loans. [*Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir.2005)] always requires the court to consider a future time period where certainty is never available, whether evidence in regard to this factor is presented in the early stages, or the later stages, of a chapter 13 case.

Although the court, as is required, expresses no position on what prefiling or filing considerations, including timing,

should be undertaken by a debtor in connection with a § 523(a)(8) adversary, the court does note the significance recently given by the Sixth Circuit to income contingent repayment opportunities:

> While not a *per se* indication of a lack of good faith, *see Educational Credit Management Corp. v. Polleys*, 356 F.3d 1302, 1311 (10th Cir.2004), Tirch's decision not to take advantage of the ICR is probative of her intent to repay her loans. *See Brunner [v. New York State Higher Educ. Services]*, 831 F.2d [395] at 397 [(2d Cir.1987)]. In cases involving a partial discharge of student loans, "it is a difficult, although not necessarily an insurmountable burden for a debtor who is offered, but then declines the government's income contingent repayment program, to come to this Court and seek an equitable adjustment of their student loan debt." *In re Swinney*, 266 B.R. 800, 806–07 (Bankr.N.D.Ohio 2001) (citing *In re Ritchie*, 254 B.R. 913, 923 (Bankr.D.Idaho 2000) and *In re Douglass*, 237 B.R. 652, 657 (Bankr.N.D.Ohio 1999)); *see also In re Storey*, 312 B.R. 867, 875 (Bankr.N.D.Ohio 2004); *In re Alderete*, 289 B.R. 410, 420 (Bankr. D.N.M.2002).

*Tirch v. Pennsylvania Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 682 (6th Cir.2005).

The policy considerations, advanced in connection with the issue of "ripeness", do not persuade this court to adopt a rigid rule prohibiting the Debtor's filing, when neither the applicable bankruptcy Codes and Rules require such a result.

*Applicable Appellate Authority*

Although appellate authority has cautioned that the presentation of these issues

---

**1.** The Creditor has attached an Order Granting Defendant's Motion To Dismiss in a case from the Southern District of Ohio. Although this court recognizes the Defendant in that case was Great Lakes, the two sentence order, without any factual information or other analysis, is not helpful to this court in determining the pending issues.

in an earlier, rather than a later, time period may be disadvantageous to debtors, it has rejected the Creditor's position. In *Ekenasi v. The Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541, 546–47 (4th Cir. 2003), the Fourth Circuit Court of Appeals rejected any time restriction on filing a student loan adversary in chapter 13:

> We first address Appellants' contention that Ekenasi's adversary proceeding seeking a discharge of his student loan obligations as an "undue hardship" was premature. More specifically, they urge us to follow those courts that have held that student loan hardship cases are never ripe for adjudication in a Chapter 13 case until near or at the time of completion of the Chapter 13 plan. *See Pair v. United States (In re Pair)*, 269 B.R. 719, 720–21 (Bankr.N.D.Ala.2001); *Soler v. United States (In re Soler)*, 250 B.R. 694, 697 (Bankr.D.Minn.2000); *Raisor v. Education Loan Servicing Ctr., Inc. (In re Raisor)*, 180 B.R. 163, 167 (Bankr.E.D.Tex.1995). Appellants argue that this interpretation is implicit in the language of §§ 1328 and 523(a)(8), which focuses on the debtor's circumstances at the point of discharge. Ekenasi, on the other hand, urges us to follow those cases that allow a debtor to seek a hardship determination at any time of his choosing. He contends the debtor may choose "the date of the 'snapshot' which the [c]ourt must examine for *Brunner* purposes." *Goranson v. Pennsylvania Higher Educ. Assistance Agency (In re Goranson)*, 183 B.R. 52, 56 (Bankr.W.D.N.Y.1995); *see United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747, 751 (B.A.P. 9th Cir.[BAP] 1998).

> As Appellants correctly observe, the *Brunner* factors, which were developed in the context of an adversary proceeding brought to discharge student loan obligations at the conclusion of a Chap-

ter 7 proceeding, do not transfer neatly to an adversary proceeding brought to discharge student loan obligations in the midst of the debtor's attempts to comply with a confirmed Chapter 13 plan. *Brunner* requires the debtor to establish that he "cannot maintain, *based on current income and expenses,* a 'minimal' standard of living" for himself and his dependents if he is forced to repay the student loans and that this condition will "likely ... persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396 (emphasis added).

In a Chapter 7 case, the bankruptcy proceeding is short-lived and the debtor achieves a quick discharge of his unsecured, dischargeable debts. Thus, predicting whether the debtor's current inability to maintain a minimal standard of living will persist throughout a significant portion of the repayment period is based upon a known, current situation. Where an adversary proceeding seeking a discharge of student loan obligations is brought early in a Chapter 13 case, however, the question of whether the debtor will be unable to maintain a minimal standard of living throughout a significant portion of the repayment period must be premised upon a prediction of what the debtor's situation will be at the conclusion of the Chapter 13 plan which, as here, may extend up to five years.

Having carefully considered these problems, as well as other rationales underlying the opposing viewpoints that have developed on this issue, we decline to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan. The text of the pertinent statutes

does not prohibit such an advance determination and, although cognizant of the policy concerns expressed by Congress in its refusal to discharge such loans, we can envision exceptional circumstances where the *Brunner* factors could be predicted with sufficient certainty in advance of the conclusion of a Chapter 13 proceeding. Nevertheless, while we do not preclude debtors from seeking a discharge determination of student loan debts prior to the completion of payments under a confirmed Chapter 13 plan, our cognizance of those policy concerns also counsels us to emphasize that it will be most difficult for a debtor, who has advanced his education at the expense of government-guaranteed loans, to prove with the requisite certainty that the repayment of his student loan obligations will be an "undue burden" on him during a significant portion of the repayment period of the student loans when the debtor chooses to make that claim far in advance of the expected completion date of his plan.

See also *United Student Aid Funds Inc. v. Taylor (In re Taylor)*, 223 B.R. 747 (9th Cir. BAP 1998); *Goranson v. Pennsylvania Higher Educ. Assistance Agency (In re Goranson)*, 183 B.R. 52 (Bankr. W.D.N.Y.1995).

*Applicable Sixth Circuit Authority*

The Creditor argues:

Although it is not clear, it appears that the Debtor/Plaintiff believes that this Court's determination of whether the student loans will be discharged upon the consummation of her plan will impact her plan payments or ECMC's claim in the case. The Debtor/Plaintiff requests that this Court "allow this matter to proceed on its merits and to allow the debtor's plan to be modified," which suggests her belief that this Court's determination could affect the claims al-

lowance process. This demonstrates a misunderstanding of the claims process. Like any other claim in this case, ECMC's claim is based upon the amount owed as of the date of filing. To the extent this Court determines that the debt underlying that claim is dischargeable, such determination merely affects the Debtor/Plaintiff's post-discharge obligations on that debt—it does not affect the amount of ECMC's claim or ECMC's right to receive distributions from the Debtor/Plaintiff's chapter 13 estate.

(Adv.Doc. 8).

The Sixth Circuit, however, has determined that, provided a bankruptcy court determines as a part of an adversary proceeding, a student loan debt constitutes an undue hardship pursuant to § 523(a)(8), the court, pursuant to § 105(a), can, upon discharge, provide complete, or partial, relief from the payment requirements of a student loan debt by altering the total amount, or the components of the amount, of the student loan debt which the debtor will be required to pay:

Therefore, when a debtor does not make a showing of undue hardship with respect to the entirety of her student loans, a bankruptcy court may-pursuant to its § 105(a) powers—contemplate granting the various forms of relief discussed in [In re] *Hornsby*, [144 F.3d 433 (6th Cir.1998)] including granting a partial discharge of the debtor's student loans. *See DeMatteis v. Case W. Reserve Univ. (In re DeMatteis)*, 97 Fed.Appx. 6, 9, No. 02–3003, 2004 WL 445167, at (6th Cir.Mar.8, 2004) ("Although the *Hornsby* decision is not perfectly clear on the question of partial discharge, the best reading is that *Hornsby* does in fact contemplate partial discharge under § 105."). Accordingly, PHEAA's assertion that a bankruptcy court must rely

exclusively on § 523(a)(8) to grant any discharge of student loans in bankruptcy must fail.

*Miller v. Pennsylvania Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 620 (6th Cir.2004).

Although understandably advocating its position, the Creditor fails to recognize the significance of the continuing, collective component of a chapter 13 bankruptcy. Of course, if the debt is determined to be non-dischargeable, nothing has changed for the parties, except the significance of the pre-clusive effect of the decision; however, if the Debtor prevails, in whole, or in part, a number of options may be available to the Debtor, which may impact future collective proceedings in the chapter 13 case.[2]

### Conclusion

Although the Court expresses no opinion concerning the point in time at which the Debtor may chose to seek a determination concerning the discharge of a § 523(a)(8) debt, the Creditor's position that the Debtor is never permitted, in a chapter 13 case, to seek such a judicial determination until, at, or near, discharge is rejected. The Creditor's Motion to Dismiss For Failure to State a Claim (Adv.Doc. 5) is DENIED. An order in accordance with this decision will be simultaneously entered.

**SO ORDERED.**

---

2. As with any judicial determination impacting the total, or partial, amount a debtor is required to pay in connection with a specific claim in the chapter 13 case, options become available which may not have been otherwise available. Although it is the responsibility of the parties, not the court, to evaluate such options, they might include modification of the chapter 13 plan, increased funding of the chapter 13 plan, accelerated distribution of funds in the chapter 13 plan, conversion, dismissal or other options.