**In re Joseph R. SWANSON, Debtor.**

**Joseph R. Swanson, Plaintiff,**

**v.**

**Internal Revenue Service, Defendant.**

**Bankruptcy No. 05–16825–12.**
**Adversary No. 06–5111.**

United States Bankruptcy Court,
D. Kansas.

May 15, 2006.

was required before the court could act in that respect.

Dan W. Forker, Jr., Hutchinson, KS, for Debtor.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This proceeding is before the Court on a motion to dismiss filed by the United States on behalf of the Internal Revenue Service. The IRS appears by counsel Thomas W. Curteman, Jr., a trial attorney in the Tax Division of the U.S. Department of Justice in Washington, D.C. The plaintiff-debtor appears by counsel Dan W. Forker, Jr., of Forker, Suter & Rose, Hutchinson, Kansas. The Court has reviewed the relevant materials and is now ready to rule.

### FACTS

The Debtor filed a Chapter 12 bankruptcy petition on October 4, 2005.[1] He reported that he owed a little more than $156,000 in priority debts to the IRS for income taxes and a civil penalty. He also reported he had no secured debts, no other priority debts, and only one general unsecured debt. A short time after the Debtor filed his petition, the IRS filed a proof of claim showing it was owed a secured claim of about $23,000, a priority claim of $13,900, and a general unsecured claim of $127,400. Despite the IRS's different classification of the debts, they appear to be the same ones the Debtor reported.

In February 2006, the Debtor filed this adversary proceeding, asking the Court to determine that his debts to the IRS are dischargeable pursuant to 11 U.S.C.A. § 507(a)(8)(A)(i). Affiliated companies jointly hold the unsecured claim the Debtor reported, and they have filed a complaint seeking a determination that he owes them a debt that is nondischargeable, and that they are entitled to a constructive

---

1. This was about two weeks before the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23, which substantially revised the Bankruptcy Code. To the extent the relevant provisions in this proceeding were amended by that Act, the new provisions do not apply here. Consequently, the Code sections cited in this decision are those in effect before most of the BAPCPA took effect.

trust against certain property. The Debtor has not yet filed a Chapter 12 plan, but has obtained one extension of time to do so and has asked for another extension, indicating he cannot formulate a plan until both these adversary proceedings are resolved.

In lieu of an answer to the Debtor's complaint in this proceeding, the IRS filed a motion to dismiss, contending, in the alternative, that the Court lacks jurisdiction of the subject matter or that the Debtor has failed to state a claim upon which relief may be granted. The IRS argues the Debtor's complaint is premature because he has not yet obtained confirmation of a plan and is not yet entitled to a discharge under § 1228. The Debtor responds that his dischargeability complaint is ripe for determination. In a reply, the IRS continues to insist the complaint is premature.

The IRS also suggested in its initial brief that the Debtor had not served his complaint on the United States Attorney for the District of Kansas or on the Attorney General of the United States in Washington, D.C., as required by Federal Rule of Bankruptcy Procedure 7004 and Civil Rule 4. The Debtor's initial service of process says he mailed copies of the summons and complaint to the United States Trustee's Office and to the IRS, both at addresses in Wichita, Kansas. After the IRS filed its motion to dismiss, the Debtor obtained an alias summons and mailed it with a copy of the complaint to the U.S. Attorney General at an address in Wichita. The IRS has not indicated whether it is now satisfied with the Debtor's service of process.

## DISCUSSION

### 1. *The Debtor's dischargeability complaint is ripe.*

As relevant here, § 523(a)(1) excepts from a Chapter 12 debtor's discharge a tax "(A) of the kind and for the periods specified in section … 507(a)(8)." Section 507(a) gives certain types of debts priority in distributions to be made from bankruptcy estates, and the provision cited in the Debtor's complaint gives eighth priority to allowed unsecured claims of governmental units to the extent the claims are for "(A) a tax on or measured by income …—(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." The Court interprets the Debtor's complaint to mean he seeks a determination that the taxes and penalty he owes the IRS are not covered by § 507(a)(8)(i) and so will not be excepted by § 523(a)(1)(A) from the discharge he hopes to obtain under Chapter 12.

The parties concentrate their arguments on the question whether the Debtor's complaint is ripe for determination now, before the Debtor has filed a Chapter 12 plan or had a plan confirmed, so the Court will consider this question first. Both parties say they have not found any case deciding whether a Chapter 12 debtor may seek a determination of dischargeability before filing a plan or obtaining confirmation of a plan, so they ask the Court to follow the reasoning of decisions in Chapter 13 cases.

The Supreme Court has said, "[R]ipeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" [2] The need for more fac-

---

**2.** *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Devel. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

tual development often leads to the conclusion an issue is not yet fit for judicial decision.[3] "The value of deciding is affected by the importance attached to the interests that may be injured, the extent of the anticipated injury, and the probability that injury will occur."[4] Some federal courts have indicated that ripeness is required for them to have subject matter jurisdiction of an issue parties want to litigate.[5]

■ Many of the cases the IRS relies on involved efforts to obtain a determination whether Chapter 13 debtors' student loans should be discharged under § 523(a)(8) of the Bankruptcy Code because not discharging them would impose an undue hardship, or under 42 U.S.C.A. § 294f(g) because not discharging them would be unconscionable.[6] These courts concluded such matters were not ripe for decision early in a Chapter 13 case, long before the debtors would become eligible for a discharge. But these courts were all concerned about deciding well in advance whether undue hardship or unconscionability would exist in the future at the time the debtor qualified for a discharge. Even when this determination is delayed until at or near the time the debtor qualifies for a discharge, it still requires deciding not only what the debtor's current earning capacity and other circumstances are, but also predicting what they will be in the future. Determining the dischargeability of such debts long before a debtor will qualify for a discharge simply adds to the speculative nature of the required soothsaying. In this case, on the other hand, the facts that control whether the Debtor's obligations to the IRS are dischargeable have already occurred, and no speculation about future circumstances will be required.

When the Debtor filed this case, Chapter 13 had available two levels of discharge: (1) for a debtor who completed payments under a plan, the discharge eliminated all debts except certain long-term ones, debts specified in § 523(a)(5), (8), and (9), and debts for restitution or a criminal fine included in a criminal sentence;[7] and (2) for a debtor who was unable to complete the payments called for by a plan due to circumstances for which he or she should not justly be held accountable and who met other requirements (commonly known as a "hardship discharge"), the discharge exceptions were broadened to include all debts specified in § 523(a).[8] Under Chapter 12, by contrast, while a debtor could also obtain either a plan-completion discharge or a hardship discharge, the excepted debts were the same for either type: (1) certain long-term debts; and (2) all debts specified in § 523(a).[9] This difference between the two chapters explains why one decision the parties cite has no bearing on this case. In *In re Auld,* Judge Flannagan ruled a creditor's objection to the Chapter 13

---

**3.** *See* 13A Wright, Miller, & Cooper, *Fed. Prac. & Pro.: Jurisdiction 2d,* § 3532.3 (1984).

**4.** 13A Wright, Miller, & Cooper, § 3532.3 at 146.

**5.** *See, e.g., In re Coleman,* 333 B.R. 841, 844 (Bankr.N.D.Cal.2005).

**6.** *See In re Bender,* 368 F.3d 846 (8th Cir. 2004) (§ 523(a)(8)); *In re Hochman,* 853 F.2d 1547 (11th Cir.1988) (adopting decision reported as *United States v. Lee,* 89 B.R. 250, 257 (N.D.Ga.1987), involving § 294f(g)); *In re Pair,* 269 B.R. 719 (Bankr.N.D.Ala.2001) (§ 523(a)(8)); *Soler v. United States (In re Soler),* 250 B.R. 694 (Bankr.D.Minn.2000) (§ 523(a)(8)); *Raisor v. Educ. Loan Serv. Center, Inc. (In re Raisor),* 180 B.R. 163 (Bankr. E.D.Tex.1995) (§ 523(a)(8)).

**7.** § 1328(a).

**8.** § 1328(b) & (c).

**9.** § 1228(a), (b), & (c).

debtor's discharge under his confirmed but not yet completed plan was premature.[10] The *pro se* creditor's claim in that case, though, was one that would certainly be discharged if the debtor qualified for a plan-completion discharge, but that might not be discharged if the debtor sought a hardship discharge.[11] Since the debtor had not asked for a hardship discharge and might never do so, there was not yet any reason to decide the extent of such a discharge. Judge Flannagan said the creditor could reassert her objection to the discharge of her debt if the debtor asked for a hardship discharge.[12] In this case, however, the taxes the Debtor owes will be treated the same under § 1228 no matter which kind of discharge the Debtor might ultimately qualify for.

Another case the IRS cites, *Rubarts v. First Gibraltar Bank (In re Rubarts),* did suggest that a dischargeability complaint is not ripe in a Chapter 13 case until the debtor successfully completes a plan or applies for a hardship discharge.[13] In *Rubarts,* however, the creditor conceded the ruling in its favor on the dischargeability question was premature, so the appellate court did not consider the question in depth.[14] Furthermore, the ruling was that the debt was nondischargeable under § 523(a)(2)(A),[15] and at the time, such a debt was not excepted from a plan-completion discharge, but only a hardship discharge. While a debtor is still progressing toward the normal plan-completion discharge under § 1328(a), it makes perfect sense to decline to rule on a question

under the hardship discharge provision of § 1328(b) that will matter only if the debtor actually tries to obtain such a discharge.

The Debtor relies on the only case the parties have cited, *Craine v. United States (In re Craine),*[16] that concerned whether the dischargeability of tax debts was ripe for decision before the debtors completed payments under their Chapter 13 plan. There, the court found the question was ripe, largely because Federal Rule of Bankruptcy Procedure 4007(b) provides that a complaint to determine the dischargeability of a debt may be filed "at any time," with a limited exception that does not include tax debts.[17] The court also distinguished cases concerning the dischargeability of debts under 42 U.S.C.A. § 294f(g) because they were subject to statutory conditions that apply only to a particular type of debt.[18] Finally, the court noted that the IRS's position would require the debtors to wait more than three years to learn whether a tax claim that would not be receiving distributions through their plan would be discharged, while an early resolution of the dischargeability question would allow them to modify their plan to propose paying the claim and thus avoid additional interest and penalties.[19] This Court similarly believes the dischargeability of the IRS's claims in this case could affect the Debtor's efforts to reorganize through a Chapter 12 plan.

The IRS offers a number of reasons why the Court should refuse to follow *Craine's* conclusion. First, it argues Rule 4007(b)

---

**10.** 187 B.R. 351, 352–53 (Bankr.D.Kan.1995).

**11.** *Id.*

**12.** *Id.* at 353.

**13.** 896 F.2d 107, 109 (5th Cir.1990).

**14.** *Id.*

**15.** *Id.*

**16.** 206 B.R. 598 (Bankr.M.D.Fla.1997).

**17.** *Id.* at 600.

**18.** *Id.* at 601.

**19.** *Id.*

applies only to dischargeability complaints filed after a case has been closed. The Court cannot agree. The first sentence of the rule allows such complaints (except those few covered by § 523(c)) to be filed at any time, and most of them will be filed before a case is closed. The Court believes the second sentence of the rule, which allows a case to be reopened without an additional filing fee so that a complaint to determine dischargeability can be filed, was intended to answer two possible questions: (1) whether the closing of the bankruptcy case ends the time otherwise allowed by the first sentence for filing such complaints; and (2) whether a filing fee can be imposed on a debtor or creditor who does not decide to file such a complaint until after the bankruptcy case has been closed. The second sentence does not restrict the "at any time" language of the first sentence to only the time after the case has been closed. Second, the IRS argues Rule 4007(b) cannot be construed to permit a determination of dischargeability to be made before a Chapter 12 debtor qualifies for a discharge under § 1228(a) by completing all payments under the plan. It appears the IRS may think the Debtor is asking the Court to grant him a discharge of his tax debt now. The Court is convinced, however, that the Debtor is seeking a declaratory judgment that some or all of his debt to the IRS will be discharged if he is able to successfully complete a Chapter 12 plan. Such a judgment would not grant the Debtor a discharge of his tax debt before he obtains plan confirmation and completes his plan payments—it would simply let him know ahead of time how a discharge will affect that debt. He will still have to complete a plan to obtain a discharge.

The Court concludes the dischargeability of the tax debts is now ripe for decision because the facts that control their dischargeability have already occurred, and the dischargeability of the debts will probably affect how the Debtor chooses to structure his Chapter 12 plan.

### 2. The Debtor has not properly served process on the United States and must try again.

In its initial brief, the IRS complained that the Debtor had not served it with summonses and copies of the complaint as required by Federal Rule of Civil Procedure 4(i)(1). That provision says that service on the United States must be effected by: (A) delivering of a copy of the summons and the complaint to the United States attorney (or to certain employees of that person's office) for the district where a suit is brought, or sending a copy of both items to the civil process clerk of that person's office by registered or certified mail; (B) sending a copy of both items to the Attorney General of the United States in Washington, D.C., by registered or certified mail; and (C) if the validity of an order of an officer or agency of the United States is being attacked and the officer or agency is not made a party, sending a copy of both items to the officer or agency by registered or certified mail. While Bankruptcy Rule 7004(a) makes this provision applicable to adversary proceedings, Rule 7004(b)(4) allows the service to be made by ordinary first class mail, instead of registered or certified mail.

In this proceeding, the Debtor is not attacking the validity of any order, so he only needed to serve copies of the summons and complaint on the civil process clerk at the Office of the United States Attorney for the District of Kansas and on the Attorney General of the United States at Washington, D.C. He tried to serve process by ordinary first class mail, as allowed by Rule 7004(b)(4). However, he failed to direct the service to the civil process clerk in the Office of the United

States Attorney for the District of Kansas or to the Attorney General in Washington.

The Tenth Circuit has explained the purpose of service of process under Federal Rule of Civil Procedure 4, the civil equivalent of Bankruptcy Rule 7004, this way:

> Personal service under Rule 4 serves two purposes: notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit. *See Hagmeyer v. United States Dep't of Treasury*, 647 F.Supp. 1300, 1303 (D.D.C.1986) (citing 4 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure[: Civil,] § 1063 [at 204 (1969 & Supp.1977)]). Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–45, 66 S.Ct. 242, 90 L.Ed. 185 (1946)).[20]

The IRS clearly received notice this proceeding was commenced against it, as shown by the fact an attorney from the Department of Justice in Washington, D.C., has appeared here on its behalf. Furthermore, in *In re Hensley*, which involved a debtor's objection to a proof of claim filed by the U.S. Department of Education, this Court recently refused to declare an order that sustained the objection to be void, even though the debtor served the objection only to the notice address the department had listed on the proof of claim, and not to the local U.S. Attorney or the department's regional office; the Court concluded the department had consented to the Court's jurisdiction by filing the proof of claim.[21] Here, the IRS has similarly filed a proof of claim and the Debtor directed one of his attempts to serve the agency to an address at least very similar to the notice address listed on the proof of claim.

■■ On the other hand, in *Hensley*, the matter was controlled by Rule 3007, which did not require service of a claim objection in the manner specified by Rule 7004 because the objection had not been joined with a demand for relief of the kind that requires an adversary proceeding. Some years ago, in *Smith v. McNamara*, a case governed by Civil Rule 4, the Tenth Circuit allowed the government to raise the question of improper service of process for the first time on appeal, declaring that the trial court never acquired jurisdiction of the government because the plaintiff did not serve either the officer sued, the local U.S. Attorney, or the Attorney General, and the government did not waive the lack of service by pleading or appearance.[22] In this proceeding, although the IRS has appeared and filed a pleading, it has not waived the insufficiency of service of process because it complained about the problem in its first pleading, as required by Civil Rule 12(g) and (h)(1), made applicable by Bankruptcy Rule 7012(b). Because (1) the Debtor's service efforts have been reasonably, though not correctly, directed to the U.S. Trustee's Office and to the IRS at an address very similar to the one listed on its proof of claim, and (2) the 120–day time

---

**20.** *Oklahoma Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir.1992).

**21.** *In re Hensley*, Case No. 98–22556–13, Memorandum and Order Denying the Motion of the United States Department of Education to Set Aside the Court's Order Granting Debtor's Objection to Claim (Bankr.D.Kan. Mar. 20, 2006).

**22.** 395 F.2d 896, 898 (10th Cir.1968).

limit fixed by Civil Rule 4(m) for service of process had not expired when the IRS filed its motion to dismiss, the Court will deny the IRS's motion to dismiss for insufficiency of process, and give the Debtor 30 days from the entry of this order to mail copies of a summons and the complaint to the civil process clerk of the U.S. Attorney's Office for the District of Kansas and to the Attorney General of the United States in Washington, D.C.[23]

## CONCLUSION

For these reasons, the Court concludes the IRS's motion to dismiss must be denied at this time. The Debtor is hereby given 30 days to serve his complaint on the government in accordance with Bankruptcy Rule 7004(b)(4), or any other proper method he may wish to employ. If he fails within that time to serve the United States as required by the rules, the IRS may reassert its motion to dismiss.

**23.** *See Stahl v. United States,* 732 F.Supp. 86, 88 (D.Kan.1990) (Proper service of process on United States as required by Civil Rule 4 is mandatory and cannot be dispensed with as simple formality, but plaintiff was given opportunity to obtain proper service before case would be dismissed).